UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHAKHIRUKH TAJIYEV,<br><br>Petitioner(s),<br>v.<br><br>WARDEN OF NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondent(s). | CASE NO. C26-4022-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner Shakhirukh Tajiyev filed a petition for a writ of habeas corpus, asserting that his detention by Immigration and Customs Enforcement ("ICE") violated his due process rights. Dkt. No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 6, 9. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a native and citizen of Kazakhstan. Dkt. No. 1 ¶ 1. He entered the United States on or around November 18, 2022, at or near San Ysidro, California. Dkt. No. 7 ¶ 3. Petitioner was encountered by a United States Border Patrol agent approximately four miles west of the Andrade Port of Entry and approximately one mile north of the United States/Mexico international boundary. *Id.* He was arrested and transported to the San Clemente Station for processing. *Id.* Petitioner expressed fear of returning to Kazakhstan. *Id.*

On November 21, 2022, Petitioner was released on an order of recognizance ("OREC") and directed to report to an ICE facility within 30 days. Dkt. No. 7 ¶ 4; Dkt. No. 8-2 (copy of OREC). The conditions of the OREC required that Petitioner seek approval before changing his residence and assist the Government in obtaining necessary travel documents. Dkt. No. 8-2. The OREC further instructed that Petitioner was not to violate any local, State, or Federal laws or

ordinances. *Id.* On November 28, 2022, Petitioner was served with a Notice to Appear, charging removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and placing him in removal proceedings. Dkt. No. 7 ¶ 4; Dkt. No. 8-1. Petitioner subsequently filed two applications for immigration relief. Dkt. No. 7 ¶¶ 5–6. His immigration master hearing is scheduled for November 27, 2026. *Id.* ¶ 9.

On September 22, 2026, upon referral by Idaho State Police and the Idaho Department of Transportation after police stopped Petitioner for bypassing a mandatory weigh-station, ICE encountered Petitioner at the Spokane, Washington ICE Office. Dkt. No. 7 ¶ 8. ICE determined that Petitioner had previously been placed out of service as a commercial driver's license holder, had mistakenly entered Canada while driving a commercial vehicle, and failed to report to a scheduled ICE check in on June 28, 2023. *Id.* ¶ 8; Dkt. Nos. 8-6, 8-7. ICE detained Petitioner that day pursuant to an I-200, Warrant of Arrest of Alien (Dkt. No. 8-7) and issued him an I-286, Notice of Custody Determination (Dkt. No. 8-9). ICE also cancelled Petitioner's OREC because it could not locate the operative release order. Dkt. No. 8-8. Petitioner was transported to the Northwest Immigration Processing Center ("NWIPC"), where he remains detained. Dkt. No. 7 ¶ 8.

Petitioner filed his petition for habeas corpus on October 20, 2026. Dkt. No. 1. The Government filed its return on November 4, 2026, and Petitioner filed his traverse on November 9, 2026. Dkt. Nos. 6, 9. This matter is now ripe for review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. ANALYSIS

### A. Petitioner Was Subject to 8 U.S.C. § 1226(a) When He Was Re-Detained.

The Government contends that Petitioner falls within the mandatory detention scheme under Section 1225(b) as an applicant for admission who was initially encountered at the United States border. Dkt. No. 6 at 2–5. Petitioner disagrees and argues that the Government's invocation of §1225(b)(2) "does not fit the custody decisions it submits," where the Government's own "evidence establishes that ICE invoked INA § 236 [i.e., §1226] both when releasing [Petitioner] and re-detaining him." Dkt. No. 9 at 1–3 (citing Dkt. Nos. 8-2, 8-9). The Court agrees with Petitioner.

As this Court and the Ninth Circuit have ruled in countless nearly identical situations, Petitioner's status as a person previously released on recognizance, and who has been living in this country for years, does not support the Government's expanded view of the INA. *See, e.g.*, *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1190, 1193 (9th Cir. 2026) (rejecting theory subjecting noncitizens present in the United States to mandatory detention regardless of the amount of time they have lived in the country, and holding that § 1226, not § 1225(b)(2), applies to "unadmitted [noncitizens] present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United

States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).

Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a). Such a holding is not only consistent with the caselaw discussed above, but consistent with the Government's own treatment of Petitioner. First, Petitioner's OREC was issued under Section 1226(a). Dkt. No. 8-2. When the Government served Petitioner with an NTA on November 28, 2022, that document also stated that Petitioner was a person "present in the United States who has not been admitted or paroled," as opposed to an "arriving" noncitizen under Section 1225. Dkt. No. 8-1 at 2. The Government similarly invoked Section 1226 as its detention authority when it arrested and detained Petitioner on September, 22, 2026, and offered him the opportunity to request that an immigration judge review his custody determination. *See* Dkt. Nos. 8-7, 8-9 (citing INA § 236, codified at 8 U.S.C. § 1226). In short, nothing in the record suggests the Government ever treated Petitioner as subject to Section 1225.

**B. Petitioner's Detention Violates Due Process**

Having determined that Petitioner's re-detention was under Section 1226, the Court now turns to the *Mathews* factors to determine whether Petitioner received the process appropriate to his circumstances.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to his circumstances.

1. <u>Petitioner has a protected interest in his liberty.</u>

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner, who was released from immigration custody and lived on an order of recognizance for approximately four years, was

arrested and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Garcia Radillo v. Scott*, No. 2:26-CV-02357-JHC, 2026 WL 2168044, at *2 (W.D. Wash. July 28, 2026) ("Even conditional release is valuable and must be seen as within the protection of the Due Process Clause." (citation modified)).

Petitioner's alleged transportation safety violations do not diminish his liberty interests, as the Government contends. Dkt. No. 6 at 7. *See Caglar v. Wamsley*, No. 2:26-CV-00787-TMC, 2026 WL 1123515, at *4 (W.D. Wash. Apr. 24, 2026) ("Caglar's detention by the Idaho State Patrol" "for alleged highway safety violations" "does not diminish his liberty interest"). To the contrary, if Petitioner "is accused of violating the law and this violation has yet to be adjudicated, then his liberty interest is increased, not diminished." *Id.* The Government's reliance on the fact that Petitioner purportedly missed a single ICE check-in on June 28, 2023 (Dkt. No. 6 at 5) is similarly unavailing. Petitioner contends he was "never informed of the … appointment in a language he could understand," and the record is absent of any appointment notice. Dkt. No. 9 at 4 (citing Dkt. No. 9-1 ¶ 2).[1] Moreover, the alleged missed appointment predated Petitioner's detention by several years, and he appeared at hearings in his immigration proceedings in the intervening years where the alleged missed appointment was apparently not an issue. And finally, in any event, a single "missed check-in[] do[es] not diminish a petitioner's protected liberty interest in remaining out of custody." *Erick P.M. v. Warden of the Mesa Verde Det. Facility*, No. 1:26-CV-04429-TLN-CSK, 2026 WL 2267939, at *4 (E.D. Cal. Aug. 6, 2026); *see also Juan B.P. v.*

[1] The Court notes that these allegations are presented in the form of a declaration from counsel rather than from Petitioner. Dkt. No. 9-1.

*Andrews*, No. 1:26-cv-01475-TLN-CSK, 2026 WL 707468, at *2–3 (E.D. Cal. Mar. 13, 2026) (finding a protected liberty interest despite "three to four unintentional missed check-ins").

Accordingly, the first *Mathews* factor favors Petitioner.

2. The risk of erroneous deprivation of liberty is high.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. It is undisputed that Petitioner was given no opportunity to contest the reasons for his re-detention. Despite the lack of process, the Government argues the risk of erroneous deprivation is low where "ICE possessed concrete, contemporaneous evidence of multiple, commercial transportation safety and law violations, including a direct referral from Idaho State Police on the day his OREC was revoked." Dkt. No. 6 at 8.

The Court is not convinced. First, with regards to the OREC, the condition states that Petitioner "must not violate any local, State, or Federal laws or ordinances." Dkt. No. 8-2 at 2. Though the Government points to allegations and traffic citations in examination reports (Dkt. Nos. 8-6, 8-7), Petitioner has not been charged with violating any laws or ordinances: The I-213 form lists Petitioner's criminal history as "None" (Dkt. No. 8-5 at 4), and the only listed criminal charge is for "alien inadmissibility" under "8 U.S.C. § 1182" (*Id.* at 3 (citation modified)). The Government does not supply any evidence of a pending criminal charge related to the alleged commercial-transportation violations, let alone a criminal conviction. Thus, whether any OREC violation occurred is a contested question that no neutral arbiter has resolved. *See generally Hernandez Rangel v. Scott*, No. 2:26-CV-03028-TL, 2026 WL 3135562, at *5 (W.D. Wash. Oct. 20, 2026) ("Petitioner's no-contest plea does not necessarily establish the factual predicate that Petitioner violated his OREC.").

But even assuming Petitioner violated the conditions of his OREC, "the fact that the Government believes it has a valid basis for revoking Petitioner's OREC does not 'obviate the

need for the Government to provide [an] individualized hearing' to allow Petitioner to challenge the reasons for his re-detention 'prior to re-detaining' him." *Voltaire v. Warden*, No. C26-2922-KKE, 2026 WL 2640667, at *3 (W.D. Wash. Sept. 8, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (explaining that even when a noncitizen's re-detention is motivated by alleged violations of release conditions, "it would not necessarily follow that Petitioner can be detained for those violations without a hearing"). In other words, "merely asserting an OREC violation does not outweigh the risk of erroneous deprivation when an individual is re-detained without a pre-deprivation hearing." *Rana v. Bondi*, Case No. 2:26-cv-00268-DGE, 2026 WL 445049, at *4 (W.D. Wash. Feb. 17, 2026) (collecting cases). The necessity of a pre-deprivation hearing is perhaps best illustrated by ICE's September 22, 2026, memorandum cancelling Petitioner's OREC because it could not locate the operative release order. Dkt. No. 8-8 ("This memo has been created because the I-220A [i.e., the OREC] was not found through checks of electronic file so it not available to complete and serves as notice of cancellation on the date listed below in lieu of completing the cancellation portion of the form itself."). ICE's "inability to locate and produce Petitioner's OREC" at the time of his arrest demonstrates that "the risk of an erroneous deprivation in this case is particularly high." *Cuervo Marin v. Ice Field Off. Dir.*, No. C26-1071-KKE, 2026 WL 1123516, at *5 (W.D. Wash. Apr. 24, 2026).

Thus, the second *Mathews* factor also favors Petitioner.

3. <u>The Government's interest in detaining Petitioner without process is low.</u>

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process. The Court finds that the Government's interest in re-detaining without process non-citizens previously released is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of

erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Although the Court acknowledges the safety concerns associated with Petitioner's alleged commercial-driving activity, the Government has not demonstrated that these concerns justified dispensing with a pre-deprivation hearing. Such a hearing would have allowed a neutral arbiter to consider Petitioner's claimed unawareness of his license suspension and alternatives to detention, including commercial-driving restrictions, reporting requirements, or location monitoring. *See* Dkt. No. 9 at 6.

In sum, the Court's review of the *Mathews* factors confirms that Petitioner's re-detention does not comport with due process.

## IV. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release.[2] *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas

---

[2] The Court rejects the Government's argument that the proper remedy is a post-deprivation hearing rather than immediate release because "courts in this District have frequently ordered in cases where petitioners were arrested

corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

## V. CONCLUSION

For these reasons, the Court GRANTS Petitioner's habeas petition (Dkt. No. 1). The Court ORDERS that:

(1) Petitioner shall be released from custody on the terms of his prior OREC no later than November 17, 2026.

(2) Petitioner shall not be re-detained, absent urgent circumstances, without a pre-deprivation hearing at which the Government must demonstrate the justification for detention by clear and convincing evidence.

---

and charged with a crime after their initial release from ICE custody." Dkt. No. 6 at 10–11. As the Court has already emphasized, Petitioner has not been charged with any crime. Moreover, numerous courts in this District have ordered release notwithstanding pending criminal charges. *See, e.g.*, *Garcia Radillo*, 2026 WL 2168044, at *3; *Fiston v. Bondi*, No. 2:26-CV-00904-JHC, 2026 WL 926064, at *4 (W.D. Wash. Apr. 6, 2026). It is well-established in this District that "post-deprivation bond hearings do not negate noncitizens' due process challenges to the circumstances of their detention." *Orozco Cortez v. Hernandez*, No. 2:26-CV-03708-JHC, 2026 WL 3168034, at *1 (W.D. Wash. Oct. 22, 2026); *see also Mendez-Prades v. Scott*, No. C26-2571-KKE, 2026 WL 2921987, at *5 (W.D. Wash. Sept. 29, 2026); *Garcia Larios v. Bondi*, No. 2:26-CV-00629-TLF, 2026 WL 1078210, at *5 (W.D. Wash. Apr. 21, 2026). That is because, among other things, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A. T.-B.*, 795 F. Supp. 3d at 1322, and "allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless," *Mendoza v. Adelanto ICE Processing Ctr. Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026).

(3) The Government shall file a declaration no later than November 19, 2026, documenting Petitioner's release in compliance with this order.

(4) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 16th day of November, 2026.

Kymberly K. Evanson
United States District Judge